CERTIFIED TRANSLATION

Exhibit A

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**AGUADILLA SUPERIOR COURT**

| **BILLY CRESPO RIVERA**<br><br>**Plaintiff**<br><br>**v.**<br><br>**T-MOBILE PUERTO RICO LLC; JOHN AND JANE DOES 1-100**<br><br>**Defendants** | **CIVIL NO:**<br><br><br>**RE:**<br>**PETITION FOR ORDER** |
|---|---|

## COMPLAINT

**TO THIS HONORABLE COURT:**

Comes now Plaintiff, Billy Crespo-Rivera (hereinafter referred to as "Plaintiff" or "Mr. Crespo"), by and through the undersigned legal representative, and hereby respectfully requests a permanent injunction under 42 U.S.C. § 12188, due to noncompliance with the provisions of Title III of the federal act known as the American with Disabilities Act, 42 U.S.C. § 12181 et seq. (hereinafter referred to as "ADA")[1], against **T-MOBILE PUERTO RICO LLC; JOHN AND JANE DOES 1-100** (hereinafter individually or jointly referred to as "Defendant," or by their names).

[1] Title III of the ADA applies to all private entities and commercial facilities that provide services to the public. The obligation imposed by Title III entails the non-discrimination in the provision of services to individuals with disabilities in the full and equal enjoyment of the goods, services and facilities, privileges, advantages, or accommodations in all places of public accommodation. The official link of the United States Government with information on Title III of the ADA is: http://www.ada.gov/

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

## THE PLACE OF PUBLIC ACCOMMODATION AT ISSUE

This action seeks to remedy illegal discrimination in an established and well-known place of **public accommodation**[2] at the location mentioned below:

**T-MOBILE**
Physical Address: 3535 Military Ave. T-Mobile F-102, Isabela, 00662
Coordinates: 18.467880250106717, -67.02406048280959
PHONE: (787) 830-8015

We will hereinafter refer to this place as "T-Mobile," "the property," and the "place of public accommodation."

## NECESSITY OF THE ACTION

1. This Complaint for Permanent Injunction is necessary for the following reasons:

[2] The term "public accommodation" or place of public accommodation, 42 U.S.C. 12181(7), is defined as private entities whose operations affect commerce and the following places are specifically mentioned as an example of places of public accommodation: hotels, motels, inns, restaurants, bars, other establishments serving food or drinks, motion picture houses, theaters, concert and event halls, stadiums, places of exhibition or entertainment; auditoriums, convention centers, lecture halls, places of public gathering; bakeries, grocery stores, clothing stores, hardware stores, shopping centers, other sales or rental establishments; laundromats, dry cleaners, banks, barber shops, beauty shops, travel services, shoe repair services, funeral parlors, gas stations, an accountant or lawyer's office, pharmacies, insurance offices, professional offices of healthcare providers, hospitals, other service establishments; a public transportation terminal, depot or station; museums, libraries, galleries, or other places of public display or collection; parks, zoos, amusement parks or other places of recreation; nurseries, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

1.1 T-Mobile Puerto Rico LLC: This legal person owns the place of public accommodation identified in the first paragraph of this complaint, that is, T-Mobile, which is identified with number 22 in the Puerto Rico Registry of Corporations and whose primary business is the provision of mobile phone services in Puerto Rico. This is where the discrimination against Mr. Billy Crespo took place on March 02, 2022, when T-Mobile employees forced Mr. Crespo to leave the property due to him not wearing a mask, without taking into account his disabilities and his medical or health conditions in order to provide him with reasonable accommodation based on his disability.

1.3[sic] Mr. Crespo is a person who suffers from depression, anxiety, diabetes, and high blood pressure. He also has a mobility disability, since he had an accident that caused him a femoral fracture on his right leg. As a result, he currently has metal screws in his leg, and he cannot walk long distances. Because of his conditions, specifically depression and anxiety, using a face mask causes Mr. Crespo to experience a feeling of shortness of breath, tightness in his chest, suffocation, difficulty breathing, and a need to go maskless in order to be able to breathe normally. In other words, the mask creates a danger for Mr. Crespo because it threatens his health by restricting his breathing and causing him a suffocation attack.

3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**THE PLAINTIFF**

2. Mr. Billy Crespo is a resident of Puerto Rico. His physical address is 433 Boquerón Road, Cabo Rojo Puerto Rico 00623, and his phone number is (787) 444-2424.

3. Mr. Crespo suffers from depression, anxiety, and claustrophobia, [which were] diagnosed in 2017. He has been on psychiatric treatment since then, whereby APS Health (leading mental health provider in Puerto Rico) instructed him to take Amitriptyline, clonazepam, and duloxetine every day. These medications are used to help maintain mental balance, relieve panic attacks or sudden and unexpected extreme fear attacks, and to treat depression and generalized anxiety disorders; the excessive worries and tensions that interfere with the daily life of people with these conditions due to chronic feelings of anxiety or nervousness, irritability caused by insomnia, and feelings of frustration and unrest. They also help control panic attacks and tachycardia, or heart palpitations caused by depression and anxiety.

4. The conditions described above interfere with Mr. Crespo's performance of normal daily activities, since his anxiety crises and panic attacks occur without any warning or symptoms. As an example, Mr. Crespo cannot wear the seat belt on his vehicle and cannot ride an elevator alone, because he feels confined or limited, due to his diagnosed claustrophobia. Additionally, he cannot undergo medical tests that require the use of large medical equipment or equipment that encases his body; he needs to be completely sedated for these purposes, otherwise, Mr. Crespo feels the urge to leave the place and he gets desperate.

4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

5. Mr. Billy Crespo also has diabetes and high blood pressure or hypertension. These conditions cause Mr. Crespo symptoms such as fatigue, blurry vision, tingling or numbness of his hands and feet, headaches, and chest tightness, among other symptoms. He takes Metformin, Glimepiride, gemfibrozil, and lisinopril to treat these illnesses. These medications help control blood sugar levels by promoting a better response to the insulin produced naturally in the body and reducing the amount of sugar produced by the liver, as well as reducing the amount of cholesterol and triglycerides, and treating heart failure, since he weighs 240 pounds.

6. Mr. Crespo also had an accident in 2001 and, as a consequence, he currently has a mobility disability. The accident caused a femoral fracture on his right leg, because of which he now has screws in his leg, and he cannot walk long distances because it causes him pain and fatigue.

**THE DEFENDANT**

7. Defendant is composed of the following [persons]:

7.1. **T-MOBILE PUERTO RICO LLC:** This legal person is the owner of the place of public accommodation described in the first paragraph hereof, that is, the owner of "T-Mobile," which is identified with number 22 in the Puerto Rico Registry of Corporations and whose primary business is the provision of mobile phone services in Puerto Rico. Mr. Billy Crespo is a T-Mobile customer. This is where the discrimination against Mr. Billy Crespo took place, when on March 02, 2022, T-Mobile's supervisor forced Mr. Crespo to leave the property

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

because he was not wearing a mask, without taking into consideration his disabilities and his medical or health conditions in order to provide him with reasonable accommodation based on his disability.

7.2. **JOHN AND JANE DOES 1-100:** These natural or legal persons are the owners, lessors, and operators of the property identified in the first paragraph hereof. Since the identity of these persons is currently unknown, the complaint will be amended in order to join them into this civil procedure. In this Petition, the term "Defendant" also includes all unknown Defendants identified with the fictitious name "John and Jane Does 1-100."

**JURISDICTION AND VENUE**

7. [sic] If this civil procedure is referred to the United States District Court, jurisdiction over the matter shall be invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4) for ADA violations.

8. The Court of First Instance has original jurisdiction to solve any disputes arising under Title III of the American with Disabilities Act.

9. This civil action has been filed before the court that has venue over the case, given that the property in question is located in this judicial region.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**THE FACTS:**
**WHAT BILLY CRESPO-RIVERA EXPERIENCED**

10. Mr. Billy Crespo visited the property on March 02, 2022.

11. Defendant failed to implement an appropriate mechanism to assist Mr. Crespo and allow him to access T-Mobile's services without wearing a face mask, disregarding Mr. Crespo's illnesses and disabilities and his right to receive equal treatment in a place of public accommodation or to be provided with alternatives to access the services offered at the property.

12. Defendant shows a restrictive approach whereby they refuse to modify the rules of access to the establishment, disregarding and discriminating against people with any type of disability or medical condition under the ADA and other related regulations on this matter.

13. The event leading to the damages occurred in the place of public accommodation known as T-Mobile, at the Plaza Isabela shopping center, located in the Municipality of Isabela. This place has implemented a control system as part of the biosecurity measures adopted during the Covid-19 pandemic, which consists in controlling the entry of people into the facility, in other words, anyone who is not wearing a mask cannot access the property's services.

14. Mr. Billy Crespo entered the property without a face mask to obtain information on service offers in order to consider purchasing a cell phone. A T-Mobile female employee greeted him and assigned him to another employee to assist him. Since Mr. Crespo was not wearing a face mask, he was being taken care of in a corner inside the property, to avoid contact with other people present

7

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

in the facility. However, the property's supervisor told Mr. Crespo, in a discriminatory, forceful, and hostile manner, that he needed to put on his mask if he wanted to remain in the establishment.

15.   Mr. Crespo told her that he could not wear a mask because of his medical conditions, but she maintained her position, showing her indifference towards Mr. Crespo's disabilities and illnesses, and she called the police to remove Mr. Billy [Crespo] from the place, in utter disregard for his request for reasonable accommodation and eliminating any possibility or potential alternative for accessing T-Mobile's services, arguing that T-Mobile "reserved the right of admission."

16.   Two officers from the Isabela District arrived at the establishment: Ricardo Rivera-Rivera, with badge # 33738, and Sgt. Sergio D. Barreto-Pérez, with badge # 8-22428, who, without any consideration and with even greater hostility than T-Mobile's employee, told Mr. Crespo that he had to wear the mask, or he would be arrested.

17.   The agents tried to take Mr. Crespo's cellphone away from him, since he was recording the issue, and they damaged the cellphone. Then, they proceeded to arrest Mr. Crespo, in utter and indiscriminate violation of the laws and of Mr. Crespo's rights. The above occurred at the place of public accommodation known as "T-Mobile,"  which is described in the first paragraph hereof.

18.   As a result of the foregoing, Mr. Crespo had an anxiety attack and lost consciousness. When he woke up, he was lying on the floor at the entrance of the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.



CERTIFIED TRANSLATION

CIMA Hospital in Isabela. He was having a seizure, since a white foam was coming from his mouth, and he was trembling or having involuntary jerky movements.

19.   When a doctor in the hospital asked the officers to let him go, Mr. Billy [Crespo]'s handcuffs were removed and he was seen by the doctor, who checked his vital signs and stabilized him.

20.   It should be clarified that Mr. Crespo does not wear a mask because of his illnesses, not due to his arbitrary desires. The day on which the events took place, Mr. Billy [Crespo] tried to explain the reason why he does not use a face mask, but T-Mobile's employee or supervisor did not listen to him, nor did the police officers, and they decided to force Mr. Crespo to leave the premises, thus denying him the services offered by the property.

21.   There are medical certifications stating Mr. Billy Crespo's [medical] conditions.

22.   It is clear that the property is a place of public accommodation and, therefore, they have an obligation to modify their "policies, practices, and/or procedures" as far as is reasonable; that is, provided that said modifications are not unreasonably costly and would not fundamentally alter the nature of the place or of its services.

23.   In this sense, it is clear that Defendant should have agreed to listen to what Mr. Crespo was trying to explain, instead of forcing him to leave the establishment without listening to him or calling the police to put him in an

9



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

uncomfortable, humiliating, and painful situation that affects his honor, moral, and health, as well as his rights.

25. [sic] It would be futile for Mr. Crespo to return to the property at this time because he is aware of the policies, practices and procedures leading to his discriminatory exclusion, given that what happened on March 02, 2022, was unpleasant and humiliating situation, particularly as it took place in front of other people who were at the property. It also affected Mr. Crespo's health, since said situation caused him a panic attack that made him suffer a seizure.

26. Furthermore, and notwithstanding the foregoing, Mr. Billy Crespo invokes standing as a person who intends to return to the property for the express purpose of searching for and identifying any discriminatory policies or procedures that may exist in the property in the future. The purpose of this search and identification shall be: (1) to report additional discriminatory policies that may be found in the future; (2) to verify compliance or noncompliance with any order issued by this Court regarding the removal of discriminatory policies or practices.

27. As a bona fide customer, Mr. Crespo has felt, and he currently feels, deterred and discouraged from visiting the property because he is aware of the illegal barriers that limit and interfere with his access to the property. He also is afraid of finding himself again in a similar situation that would affect his health.

28. Mr. Crespo knows that it would be useless to challenge these practices, because challenging them means subjecting himself to a humiliating, discriminatory, dangerous, and painful situation. All the practices or procedures described herein are related to Mr. Crespo's disability and interfere with his full

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.



and equal access to the property and its services. However, despite feeling discouraged, he intends to go back to the facility to search for, identify, and report the discrimination existing at the property.

29. Based on his personal observations and on his experience as a person with limitations, Mr. Crespo affirmatively claims that the following discriminatory practices or procedures exist at the property:

**Discriminatory Practices or Procedures Existing at the Property**

29.1. The property has discriminatory policies, practices, or procedures in place against people who cannot wear a face mask due to their disabilities, illnesses, or health conditions.

29.2. The property's practices or procedures do not include making reasonable accommodations to care for people who cannot wear a face mask due to their medical conditions, that is to say, the property does not make any effort to provide their services equally to all of their customers, including people who are unable to wear a face mask because of their disabilities, or to provide reasonable accommodation to those who feel isolated from society because of their conditions and who want to access the services offered to the public by T-Mobile.

29.3. The property has no policies, practices, or procedures in place that include good customer service and equal access for people with disabilities.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

30. The policies, practices and procedures identified above are only the ones that are personally known to Mr. Crespo based on his experience, not based on scientific or expert evidence. All of these discriminatory practices gave rise to the damages caused by Defendant to Mr. Crespo; in other words, thanks to these practices, Mr. Billy [Crespo] was unable to have full, free, and spontaneous access to the property and was also unable to access its services.

31. For this reason, Mr. Billy Crespo intends to use the discovery mechanisms to search for, identify, and point out any discriminatory practices or procedures associated with Mr. Crespo's disability in order to obtain full and equal access to the property. Once these discriminatory procedures have been identified, Mr. Crespo intends to request the Court to amend the pleadings in order to bring them into line with the discovered evidence regarding currently unknown ADAAG violations.

32. Mr. Crespo feels discouraged from visiting the property because the Defendant maintains discriminatory practices and procedures against people with disabilities or illnesses that prevent them from using face masks. Mr. Crespo knows that if he visits the property again, he would be discriminated against once more.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

33. Mr. Crespo knows the goods and services offered at the property and intends to return to the property once the discriminatory practices described above have been eliminated.

34. Defendant should have been aware of the discriminatory practices existing at the property that violate federal law or that interfere with (or deny) access to people with disabilities who cannot wear a face mask. Also, Defendant has the financial resources to create reasonable accommodations within the property (without much difficulty or expense) and to ensure the provision of services to these persons. However, to date, Defendant refuses to eliminate the discriminatory practices described above.

35. Defendant has sufficient control and authority to modify the property's policies in order to include reasonable accommodations for people who cannot wear a face mask and, therefore, to eliminate discriminatory practices to comply with applicable federal regulations. However, Defendant has intentionally maintained the discriminatory policies and procedures described above and has intentionally abstained from eliminating said policies and procedures.

36. It is clear that Defendant could make reasonable accommodations such as: Creating a space within the property to care for customers who cannot use a face mask due to their medical conditions, in order to serve these customers by taking into account their distance from other people, or creating a special counter or window to help these persons individually, instead of denying them services. The aforementioned options are only some examples of the strategies that the place of public accommodation could create to prevent denying services to customers.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

37. Mr. Crespo affirmatively alleges that the constant presence of the described practices at the property is so obvious and overt that it establishes the Defendant's discriminatory intent. The existing noncompliance is so substantial that it is obvious to any casual observer with no expertise in applicable regulations or who has no experience with discriminatory practices or customer service. Based on the foregoing, Mr. Crespo believes, and therefore affirmatively alleges, that the discriminatory intent includes the conscious and weighted refusal to provide services and prohibit access to people who should not wear a face mask due to their disabilities or medical conditions.

38. Considering Defendant's noncompliance with the provisions of the ADAAG, Mr. Crespo believes, and therefore alleges, that Defendant has no internal policies, procedures, or documents associated with ADA compliance efforts made at the Property.

**FIRST CAUSE OF ACTION**
**American with Disabilities Act of 1990**
**Non-structural Barriers: Policies, Practices, and Procedures**

39. Mr. Crespo incorporates the pleadings contained in the above paragraphs.

40. Title III of the ADA essentially provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182 (a).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

41. Defendant discriminated against Mr. Crespo by denying him full and equal enjoyment and access to the goods, services, privileges, and accommodations of the property during each visit and on every occasion that Mr. Billy [Crespo] decided not to visit the place.

42. The ADA also requires making reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 USC § 12182 (b) (2) (A) (ii).

43. Defendant violated the ADA by failing to make reasonable modifications in their policies, practices, or procedures at the property, when these modifications are necessary to afford (without fundamentally altering the nature of the place of public accommodation) equal access to the goods, services, facilities, or accommodations.

44. Mr. Crespo claims that the non-elimination of the [discriminatory] practices has been a deliberate, voluntary, and intentional act, because:

    44.1. Defendant does not recognize that compliance with the ADA is an obligation that must be met, since they have refused to eliminate discriminatory practices or create alternatives to grant access to people who are unable to wear a mask to enter the establishment.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

44.2. Defendant is the owner, lessor, and/or operator of the property and, as such, it has control over the practices and procedures employed at the property. Defendant has the means and the financial capacity to make reasonable accommodations at the property in order to eliminate discriminatory practices.

44.3 Places of public accommodation have an obligation to be accessible to everyone, regardless of their condition or disability.

44.4. Defendant has no justification for evading its legal responsibilities and for being unaware of applicable regulations.

44.5. It is clear that people with disabilities or medical conditions who experience humiliations such as the ones suffered by Mr. Crespo at the property experience the loss of their dignity, their independence, and their personality, and, in general, they suffer significant moral damages related to segregation and discrimination due to the lack of equal access to these types of public accommodations. See, Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010).[3]

44.6. As a result of the discriminatory practices described herein, Mr. Billy [Crespo] suffered and continues to suffer humiliation, anguish, and impairment of his personal dignity and his right to a life free from

[3] Coco, KJ (2010) Más allá de la etiqueta de precio: un análisis económico del Título III de la Ley de Estadounidenses con Discapacidades, 20 Kan. J. L. & Pub. Pol'y, 20, 58.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

discrimination. In addition, as it has been mentioned, not only his mental health was affected, but also his physical health.

45. Mr. Crespo is entitled to a remedy and a permanent injunction pursuant to the provisions of 42 USC § 12188 (a) (2) and 28 CFR § 36.504 (a), ordering Defendant to take all necessary measures to eliminate the discriminatory practices or procedures described above so that their implementing regulations are in compliance with the provisions of the ADA, and so that their facilities are completely accessible to people who are unable to wear a mask due to their medical conditions.

46. Mr. Crespo is further entitled to request that the Court retain jurisdiction for an indefinite period in order to monitor Defendant's compliance with all relevant ADA requirements and to ensure that Defendant has adopted and is following an institutional policy that will make them remain in full compliance with the law.

47. Should Defendant's discriminatory condition continue, Mr. Crespo also has the right to request that the property be closed and shut down as a measure to stop the discriminatory condition until Defendant has certified, to the satisfaction of the Court, that alternative mechanisms or policies have been established to provide services to people with disabilities who visit the property, thus eliminating any type of discrimination or impairment of the dignity of their visitors.

17

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

48. Mr. Crespo is entitled to attorney's fees, litigation costs, and expert witness costs and expenses pursuant to 42 USC §§ 12205.

**LEGAL REMEDIES SOUGHT**

**IN VIEW OF ALL OF THE ABOVE,** Plaintiff very respectfully requests the following legal remedies:

A. A declaratory judgment providing that Defendant has violated the requirements of Title III of the ADA, as well as the relevant implementing regulation of the ADA; and providing that the property's practices, policies, and procedures prevent it from being fully accessible for people who are unable to wear a mask due to their medical and health conditions, as is the case with Mr. Billy Crespo.

B. A permanent statutory injunction in accordance with the provisions of 42 USC § 12188 (a) (2) and 28 CFR § 36.504 (a), ordering Defendant to take all necessary measures to eliminate the discriminatory practices, policies, and procedures described above in order to create reasonable accommodations in their facilities that would allow access to people who are unable to use a mask because of their medical conditions, thus bringing its facilities into compliance with the requirements of the ADA and its implementing regulations, to make their facilities completely accessible.

C. It is also requested that the court retain jurisdiction for an indefinite period in order to monitor Defendant's compliance with all relevant ADA requirements and to ensure that Defendant has adopted an institutional

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

policy that will enable them to adopt alternative measures, in full compliance with the law.

D. In the event that the Defendant continues its discriminatory condition, it is hereby requested, pursuant to the provisions of 42 USC § 12188 (a) (2) and 28 CFR § 36.504, that the property be closed and shut down as a measure to stop the discriminatory condition until Defendant has certified, to the satisfaction of the court, that the discrimination has been eliminated;

E. Attorney's fees, costs, and litigation costs, in accordance with 42 USC § 12205.

F. The provision of any other equitable and appropriate remedy in law or in equity that may have not been expressly requested, but that may be applicable by law.

**RESPECTFULLY SUBMITTED.**

On this 10th day of June of 2022.

**Velez Law Group LLC**
Civil Rights Division

f/José Carlos Vélez-Colón
José C. Vélez-Colón, Esq.
Attorney Registry No. 18913
Velez Law Group LLC
Condominio Midtown
421 Muñoz Rivera Ave #205
San Juan, PR 00918-3115
vlg@velezlawgroup.com
Phone: (787) 254-8267

Attorney for Plaintiff

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE AGUADILLA**

| | |
|---|---|
| **BILLY CRESPO RIVERA**<br><br>**Parte Demandante**<br><br>**v.**<br><br>**T-MOBILE PUERTO RICO LLC; FULANOS DE TAL 1-100**<br><br>**Parte Demandada** | **CIVIL NÚM:**<br><br>**SOBRE: PETICIÓN DE ORDEN** |

**DEMANDA**

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Billy Crespo Rivera (en adelante, "parte demandante" o "Sr. Crespo", a través de la representación legal que suscribe, y solicita un interdicto permanente al amparo de 42 U.S.C. § 12188, debido al incumplimiento de las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referiremos al estatuto federal como "Ley ADA")[1], por el incumplimiento de **T-MOBILE PUERTO RICO LLC; FULANOS DE TAL 1-100** (en adelante de manera individual por su nombre o de manera conjunta "parte demandada")".

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Título III de Ley ADA es: http://www.ada.gov/

## EL LUGAR DE ACOMÓDO PÚBLICO EN CUESTIÓN

Esta es una acción que busca remediar la discriminación ilegal en un lugar de <u>acomodo público</u>[2] establecido y conocido en el lugar que se menciona a continuación:

**T-MOBILE**
Dirección física: 3535 Ave. Militar T-Mobile F-102, Isabela, 00662
Coordenadas: 18.467880250106717, -67.02406048280959
Teléfono: (787) 830-8015

En adelante, nos referiremos a este lugar como "T-Mobile" "la propiedad", el "lugar de acomodo público".

## NECESIDAD DE LA ACCIÓN

1. Esta demanda de interdicto permanente es necesaria por lo siguiente:

[2] El término "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas, cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

1.1. T-Mobile Puerto Rico LLC; Esta persona jurídica es titular del lugar de acomodo público identificado en el primer párrafo de esta demanda, es decir, de T-Mobile, la cual esta identificada en el Registro de Corporaciones de Puerto Rico con el número 22, y cuya actividad principal es ofrecer servicios de telefonía móvil en Puerto Rico. En este lugar ocurrió el discrimen en contra del Sr. Billy Crespo, pues el día 02 de marzo de 2022 los empleados de T-Mobile obligaron al Sr. Crespo a salir de la propiedad por no usar mascarilla, sin tener en cuenta sus discapacidades, afectaciones o condiciones de salud y en consecuencia brindar el acomodo razonable pertinente según su discapacidad.

1.3 El Sr. Crespo es una persona que sufre de depresión, ansiedad, diabetes, y presión arterial alta, además de ello, tiene una discapacidad de movilidad, pues sufrió un accidente que le ocasionó una fractura femoral en su pierna derecha, por lo cual en la actualidad cuenta con tornillos en su pierna, y no puede transitar distancias muy largas. Estas condiciones, específicamente la depresión y la ansiedad hacen que el uso de la mascarilla genere en el señor Crespo sensación de falta de aire, opresión, y asfixia, dificultad para respirar y necesidad de estar libre de la mascarilla para respirar con normalidad. Es decir, la mascarilla crea un peligro para el Sr. Crespo, pues esta perjudica su salud ya que restringe su respiración y genera crisis de ahogo.

## LA PARTE DEMANDANTE

2.      El Sr. Billy Crespo es residente de puerto rico, su dirección física es: 443 Carr Boquerón Cabo Rojo Puerto Rico 00623, y su número de teléfono es: (787) 444-2424.

3.      El señor Crespo sufre de depresión, ansiedad y claustrofobia, diagnosticadas desde el año 2017. Desde entonces se encuentra en tratamiento psiquiátrico, en el cual la APS Health (grupo líder en salud mental de Puerto Rico) le indicó tomar diariamente Amitriptilina, clonazepam y dolexetina, Estos medicamentos se utilizan para ayudar a mantener el equilibrio mental, aliviar los ataques de pánico, o ataques repentinos e inesperados de miedo extremo, tratar la depresión y los trastornos de ansiedad generalizada; las preocupaciones y tensiones excesivas que perturban la vida diaria de las personas que padecen estas condiciones, por sensaciones crónicas de ansiedad o nerviosismo, de irritabilidad debido al insomnio, y sentimientos frustración e intranquilidad. También, ayudan a controlar los ataques de pánico y las taquicardias o palpitaciones causadas por la depresión y la ansiedad.

4.      Los padecimientos descritos interfieren en la realización de las actividades normales diarias del Sr. Crespo, ya que su crisis de ansiedad y sus ataques de pánico se presentan sin advertencia o existencia de síntomas. A modo de ejemplo: El Sr. Crespo no puede usar el cinturón de seguridad en su vehículo y no puede subirse a un ascensor solo, porque se siente encerrado o limitado, debido a la claustrofobia que le han diagnosticado. Adicionalmente, no puede someterse a exámenes médicos en los cuales se utilicen equipos médicos grandes o que estén alrededor

AG2022CV00873 10/06/2022 09:40:46 pm Entrada Núm. 1 Página 5 de 19

de su cuerpo, para ello, deben sedarlo completamente, pues de lo contrario, el Sr. Crespo siente la necesidad de salir de allí y se desespera.

5. Así mismo, el Sr. Billy Crespo sufre de Diabetes y presión arterial alta, o hipertensión. Estos padecimientos causan en el señor Crespo, entre otros, síntomas como, fatiga, visión borrosa, hormigueo o entumecimiento en las manos y los pies, cefaleas, y sensación de opresión en el pecho. Para tratar estas enfermedades, toma Metformina, Glimepiride, gemfibrozil y lisinopril. Estos medicamentos ayudan controlar el nivel de azúcar en la sangre ayudando al cuerpo a responder mejor a la insulina que produce de manera natural, y reduciendo la cantidad de azúcar que el hígado produce, reducir la cantidad de colesterol y triglicéridos y tratar la insuficiencia cardíaca, debido a que pesa 240 libras.

6. Adicionalmente, tuvo un accidente en el año 2001, y debido a esto, actualmente tiene una discapacidad de movilidad, pues el mencionado accidente le ocasionó una fractura femoral en su pierna derecha, por lo cual en la actualidad cuenta con tornillos en su pierna, y no puede transitar distancias muy largas pues esto le genera dolor y cansancio.

## LA PARTE DEMANDADA

7. La Parte demandada está integrada así:

   7.1. **T-MOBILE PUERTO RICO LLC**: Esta persona jurídica es titular del lugar de acomodo público identificado en el primer párrafo de esta demanda, es decir, de "T-Mobile", la cual esta identificada en el Registro de Corporaciones de Puerto Rico con el número 22, y cuya actividad principal es ofrecer servicios de telefonía móvil en Puerto Rico. El Sr. Billy Crespo es cliente de

T-Mobile. En este lugar ocurrió el discrimen en contra del Sr. Billy Crespo, pues el día 02 de marzo de 2022 la supervisora de T-Mobile obligó al Sr. Crespo a salir de la propiedad por no usar mascarilla, sin tener en cuenta sus discapacidades, afectaciones o condiciones de salud y en consecuencia brindar el acomodo razonable pertinente según su discapacidad.

7.2. **FULANOS DE TAL 1-100:** Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores de la propiedad que se identifica en el primer párrafo de esta petición. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la demanda los fines de acumularlos a este procedimiento civil. En esta demanda, el término "parte demandada" incluye también a todos los demandados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

7. De este procedimiento civil ser en removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

8. El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la American with Disabilities Act.

9. Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la propiedad en controversia está ubicada en esta región judicial.

## HECHOS:
## EXPERIENCIA DE BILLY CRESPO RIVERA.

10. El señor Billy Crespo visitó la propiedad el día 02 de marzo de 2022.

11. La parte demandada no procuró implementar un mecanismo idóneo para atender al sr. Crespo y que este pudiera acceder a los servicios de T-Mobile sin usar la mascarilla, desconociendo las enfermedades y discapacidades que este padece y los derechos del mismo, relacionados con obtener un trato igualitario en un lugar de acomodo público o recibir alternativas para acceder al servicio ofrecido en la propiedad.

12. La parte demandada manifiesta una visión restrictiva a raíz de la cual se niega a modificar las reglas de acceso al establecimiento, desconociendo y discriminando a las personas con algún tipo de discapacidad o condición médica a la luz de la Ley ADA y demás normas en esta materia.

13. El hecho generador del daño ocurrió en el lugar de acomodo público denominado T-Mobile, en el centro comercial Plaza Isabela, ubicado en el Municipio de Isabela. Este lugar cuenta con un sistema de control debido de las medidas de bioseguridad adoptadas por la pandemia en virtud del virus Covid-19, que consiste en controlar la entrada de las personas al lugar, es decir, si alguien no usa la mascarilla no puede acceder a los servicios de la propiedad.

14. El Sr. Billy Crespo entró a la propiedad sin mascarilla para conocer ofertas en los servicios y considerar hacer negocios de compra de un celular, una empleada de T-Mobile lo recibió y asignó a otro empleado

para que lo atendiera, como el Sr. Crespo no tenía tapabocas, estaba siendo atendido en una esquina de la propiedad, para evitar el contacto con otras personas que estuvieran en el lugar. Sin embargo, la supervisora de la propiedad, de manera discriminatoria, enérgica y hostil le indicó al Sr. Crespo que debía ponerse la mascarilla si quería permanecer en el establecimiento.

15. El Sr. Crespo le manifestó que debido a sus condiciones médicas no podía usar mascarilla, pero esta se mantuvo en su posición, se mostró indiferente ante las discapacidades y enfermedades que padece el Sr. Crespo, y llamó a la policía para retirar al Sr. Billy del lugar, ignorando por completo la solicitud del acomodo razonable realizada por este, y eliminando cualquier posibilidad o alternativa para acceder a los servicios de T-Mobile, pues argumentaba que T-Mobile "se reservaba el derecho de admisión".

16. Dos oficiales del Distrito de Isabella llegaron al establecimiento: Ricardo Rivera Rivera con placa # 33738 y el Sgto. Sergio D. Barreto Pérez con placa # 8-22428, quienes sin consideración alguna y con aun mayor hostilidad que la empleada de T-Mobile indicaron al Sr. Crespo que debía ponerse la mascarilla, o sería arrestado.

17. Los agentes intentaron quitarle el celular al Sr. Crespo, pues este estaba grabando lo sucedido, y lo dañaron. Así mismo, procedieron con el arresto de este, en total e indiscriminada violación de las leyes y los derechos, del Sr. Crespo. Lo anterior, sucedió en el lugar de acomodo público conocido como "T-Mobile", descrito en el primer párrafo de esta demanda.

AG2022CV00873 10/06/2022 09:40:46 pm Entrada Núm. 1 Página 9 de 19

18. Teniendo en cuenta lo sucedido, el Sr. Crespo sufrió un ataque de ansiedad, y perdió el conocimiento, cuando se despertó estaba en el piso de la entrada del hospital CIMA de Isabela, sufriendo una convulsión, pues una espuma blanca salía de su boca y temblaba o tenía movimientos espasmódicos incontrolables.

19. Cuando un médico del hospital solicitó a los oficiales de policía que lo soltaran, al Sr. Billy le quitaron las esposas, y fue atendido por el médico, el cual tomó sus signos vitales y lo estabilizó.

20. Es pertinente aclarar que el Sr. Crespo no usa mascarilla debido a sus enfermedades, y no a un capricho deliberado, él día que ocurrieron los hechos él Sr. Billy intentó explicar la razón por la cual no utiliza su mascarilla, pero la empleada o supervisora de T-Mobile no lo escuchó, así como tampoco lo hicieron los policías, y decidieron forzar el retiro del lugar del Sr. Crespo, negándole a este, los servicios ofrecidos por la propiedad.

21. Existen certificaciones médicas que indican las condiciones que padece el Sr. Billy Crespo.

22. Es evidente que la propiedad es un acomodo público, y que por lo tanto tiene la obligación de modificar sus "políticas, prácticas y/o procedimientos" en la medida que sea razonable; es decir siempre y cuando realizar dichas modificaciones no sea irrazonablemente oneroso o altere fundamentalmente la naturaleza del lugar o de sus servicios.

23. Bajo este entendido es evidente que la parte demandada debió acceder a escuchar los argumentos que el Sr. Crespo intentaba explicar, en vez de proceder a obligarlo a salir del establecimiento sin escucharlo o

llamar a la policía para someterlo a situaciones incomodas, humillantes, y doloras, que afectan su honra, moral, y salud, además de sus derechos.

25. Para el Sr. Crespo sería fútil regresar a la propiedad en este momento ya que tiene conocimiento de las políticas, prácticas y procedimientos que provocaron su exclusión discriminatoria, pues lo sucedido el 02 de marzo de 2022 fue desagradable y humillante, particularmente porque se dio enfrente de otras personas que se encontraban en la propiedad, así como también afectó la salud del Sr. Crespo, pues la situación provocó un ataque de pánico que le generó una convulsión.

26. Además, y de manera totalmente independiente a lo anterior, el Sr. Billy Crespo invoca legitimación como persona que tiene la intención de regresar a la propiedad con el propósito expreso de buscar e identificar políticas o procedimientos discriminatorios que existan en esta en el futuro. El fin de la búsqueda e identificación de lo anterior, será con el fin de: (1) denunciar políticas discriminatorias adicionales que se encuentren en el futuro; (2) verificar el cumplimiento o no cumplimiento de cualquier orden que dicte este tribunal sobre eliminación de políticas o prácticas discriminatorias.

27. En su capacidad de cliente bona fide, el Sr. Crespo se ha sentido, y se siente hoy en día, disuadido o desalentado de visitar la propiedad porque tiene conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la misma, además de ello, siente miedo de volver a pasar por una situación parecida que afecta su salud.

28. El Sr. Crespo sabe que sería inútil enfrentar estas prácticas porque enfrentarlas equivale a someterse a una situación humillante,

AG2022CV00878 10/06/2022 09:40:46 pm Entrada Núm. 1 Página 11 de 19

discriminatoria, peligrosa y dolorosa. Todas las practicas o procedimientos aquí descritos están directamente relacionados con la discapacidad del Sr. Crespo e interfieren en su completo igualitario acceso a la propiedad y sus servicios. No obstante, a pesar de sentirse disuadido, tiene la intención de regresar para buscar, identificar y denunciar el discrimen que existe en esta propiedad.

29. A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones, el Sr. Crespo alega afirmativamente que existen las siguientes practicas o procedimientos discriminatorios en la propiedad:

**Practicas o procedimientos discriminatorios en la propiedad**

29.1. La propiedad tiene políticas, practicas o procedimientos discriminatorios, en contra de las personas que por sus discapacidades, enfermedades o condiciones no pueden utilizar mascarilla.

29.2. La propiedad no incluye dentro de sus prácticas o procedimientos el realizar acomodos razonables para atender a este tipo de personas que por sus condiciones médicas no pueden usar mascarillas, es decir, no intenta prestar los servicios de manera igualitaria para todos sus clientes, incluyendo a personas que no pueden usar mascarilla por su discapacidad y proporcionar acomodos razonables para aquellos que se sienten aislados de la sociedad por sus padecimientos y quieran acceder a los servicios que ofrece al público T-Mobile

AC2022CV00833 10/06/2022 09:40:46 pm Entrada Núm. 1 Página 12 de 19

29.3. La propiedad no tiene políticas, practicas o procedimientos que incluyan un buen servicio al cliente y acceso igualitario para las personas en condición de discapacidad.

30. Las políticas, practicas o procedimientos identificados en el párrafo anterior son solo aquellos que el Sr. Crespo conoce personalmente a base de su experiencia, no a base de pruebas científicas o periciales. La totalidad de las prácticas discriminatorias, son el origen del daño causado por la parte demandada al Sr. Crespo, es decir, gracias a estas, el sr. Billy no puedo tener un acceso completo, libre y espontaneo a la propiedad y tampoco, acceder a sus servicios.

31. Por esto, es la intención del Sr. Billy Crespo utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas practicas o procedimientos discriminatorios relacionados con la discapacidad del Sr. Crespo para que el acceso a la propiedad sea completo e igualitario para este. Luego de identificados los procedimientos discriminatorios, el Sr. Crespo se propone solicitar al tribunal enmendar las alegaciones para modificar las mismas teniendo en cuenta las pruebas descubiertas sobre violaciones a la ADAAG ahora desconocidas.

32. El Sr. Crespo se siente desalentado de visitar la propiedad porque la parte demandada mantiene en esta, prácticas y procedimientos discriminatorios en contra de personas con discapacidades o enfermedades que impidan el uso de la mascarilla. El Sr. Crespo sabe que si visita la propiedad nuevamente, sufriría un discrimen otra vez.

33. El Sr. Crespo conoce los bienes y servicios ofrecidos en la propiedad, y tiene la intención de regresar a ella una vez que se eliminan las prácticas discriminatorias descritas.

34. El demandado debía saber, que en la propiedad existen prácticas discriminatorias que violan la ley federal e interfieren (o niegan) el acceso a personas en condición de discapacidad que no puedan usar mascarilla. Además, el demandado tiene los recursos financieros para crear acomodos razonables dentro de la propiedad (sin mucha dificultad o gasto), y garantizar la prestación del servicio a estas personas. Hasta la fecha, sin embargo, la parte demandada se niega a eliminar las prácticas discriminatorias descritas.

35. La parte demandada tiene el suficiente control y autoridad para modificar las políticas de la propiedad y procurar incluir acomodos razonables para las personas que no pueden usar mascarilla, y así eliminar las prácticas discriminatorias para cumplir con la reglamentación federal aplicable. Sin embargo, la parte demandada, de manera intencional, ha mantenido en la propiedad las políticas y procedimientos discriminatorios descritos y se ha abstenido intencionalmente de eliminarlos.

36. Es claro que la parte demandada podría realizar acomodos razonables como: Crear un espacio dentro de la propiedad para atender a personas que no pueden utilizar la mascarilla en virtud de sus condiciones médicas, para ser atendidos considerando la distancia de las demás personas, o crear una ventanilla para atender a estas personas individualmente, pero no negarles el servicio. Las alternativas anteriores

son solamente algunos ejemplos de las estrategias que podría crear el lugar de acomodo público para evitar negar el servicio.

37. El Sr. Crespo alega afirmativamente que la presencia continua de las practicas descritas en la propiedad es tan obvia y abierta que establece la intención discriminatoria de la parte demandada. El incumplimiento existente es tan sustancial que es obvio para un observador casual que no tiene conocimiento de la reglamentación aplicable o que no tiene experiencia con prácticas discriminatorias y/o atención al cliente. Es con base en lo anterior que el Sr. Crespo cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no prestar servicios y prohibir el acceso de personas que, en razón a sus discapacidades o condiciones médicas, no deban usar mascarilla.

38. Teniendo en cuenta el incumplimiento de la parte demandada con la ADAAG, el Sr. Billy Crespo cree, y por lo tanto alega, que la parte demandada no tiene políticas, procedimientos o documentos internos en relación a esfuerzos de cumplimiento de ADA en la propiedad.

**PRIMERA CAUSA DE ACCIÓN**
**"American with Disabilities Act de 1990"**
**Barreras no estructurales: Políticas, prácticas y procedimientos.**

39. El Sr. Crespo incorpora las alegaciones contenidas en los párrafos anteriores.

40. El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular,

arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

41.    La parte demandada discriminó en contra del Sr. Crespo al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la propiedad durante cada visita y cada ocasión en que el Sr. Billy decidió no visitar el lugar.

42.    La ley ADA también requiere hacer modificaciones razonables en las políticas, prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

43.    La parte demandada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

44.    El Sr. Crespo alega que la falta de eliminación de las prácticas ha sido de manera voluntaria e intencional porque:

44.1. La parte demandada no reconoce que el cumplimiento de la ADA sea una obligación que debe cumplir, pues se ha negado a eliminar las prácticas discriminatorias o a crear alternativas para dar acceso a personas que no pueden ingresar con mascarilla al lugar.

44.2. La parte demandada es titular, arrendador, arrendatario y/o operador de la propiedad, y como tal tiene control sobre las

prácticas y procedimientos empleados en ella. La parte demandada tiene los medios y la capacidad financiera para hacer acomodos razonables en la propiedad y así eliminar las prácticas discriminatorias.

44.3. Los lugares de acomodo público tienen la obligación de ser accesibles para todas las personas sin importar sus condiciones o discapacidades.

44.4. La parte demandada no tiene justificación alguna para evadir sus obligaciones legales, y desconocer la normatividad aplicable.

44.5. Es claro que las personas con discapacidades o condiciones médicas que sufren humillaciones como la que vivió el Sr. Crespo en la propiedad, experimentan pérdida de su dignidad, de su independencia, de su personalidad y en general, su moral sufre daños importantes, relacionados con la segregación y el discrimen por la falta de acceso igualitario a este tipo de acomodos públicos. Vease Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010).[3] Y Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Services capes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007).[4]

44.6. Como resultado de las prácticas discriminatorias descritas en la

[3] Coco, KJ (2010). Más allá de la etiqueta de precio: un análisis económico del Título III de la Ley de Estadounidenses con Discapacidades. Kan. JL y pub. Poll'y, 20, 58.

[4] Baker, SM, Holland, J. y Kaufman-Scarborough, C. (2007). Cómo los consumidores con discapacidades perciben la "bienvenida" en los entornos de servicios minoristas: un estudio de incidentes críticos. Revista de Marketing de Servicios .

presente acción, el Sr. Billy sufrió y continúa sufriendo humillación, angustia y menoscabo de su dignidad personal y derecho a vivir libre de discriminación. Adicionalmente, y como ya se ha mencionado, no solamente se vio afectada su salud mental, sino también su salud física.

45. El Sr. Crespo tiene derecho a un remedio y a un interdicto estatutario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la parte demandada que tome las medidas necesarios para eliminar las practicas o procedimientos discriminatorios descritos anteriormente para que sus reglamentos de implementación, cumplan con lo establecido por la ADA y así, sus instalaciones sean totalmente accesibles para personas que no pueden usar la mascarilla en razón de sus condiciones médicas.

46. Además, tiene derecho a que el tribunal retenga jurisdicción por un período, para supervisar que la parte demandada cumpla con los requisitos relevantes de la ADA y así asegurarse que esta haya adoptado, y siga una política institucional que haga que permanezca totalmente en cumplimiento de la ley.

47. El Sr. Crespo también tiene derecho a que en caso que la parte demandada continúe su condición discriminatoria, se pueda solicitar el cierre y clausura de la propiedad como medida para detener la condición discriminatoria hasta tanto la parte demandada haya acreditado de manera fehaciente y a satisfacción del tribunal, que se han establecido mecanismos o políticas alternas para personas en condición de discapacidad que visitan la propiedad, eliminando cualquier tipo de discrimen o menoscabo a la dignidad de sus visitantes;

48. Conforme a 42 USC §§ 12205, el Sr. Crespo tiene derecho a sus honorarios de abogado, gastos de litigio, costas, y gastos de testigos periciales.

## REMEDIOS LEGALES SOLICITADOS

**POR TODO LO CUAL**, la parte demandante muy respetuosamente solicita los siguientes remedios legales:

A. Una sentencia declaratoria en la cual se indique que la parte demandada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA. Así como indique también que las practicas, políticas y procedimientos de la propiedad no permiten que esta sea completamente accesible para personas que no pueden usar mascarilla en razón a sus condiciones médicas y de salud, como es el caso del señor Billy Crespo.

B. Un interdicto estatuario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la parte demandada a tomar las medidas necesarias para eliminar las prácticas, políticas y procedimientos discriminatorios descritos anteriormente para crear en sus instalaciones acomodos razonables que permitan el acceso de personas que no puedan usar el tapabocas en razón a sus condiciones médicas, y de esta manera cumpla la propiedad con los requisitos establecidos en la ADA y sus reglamentos de implementación para hacer sus instalaciones totalmente accesibles.

C. Que además el tribunal retenga jurisdicción por un período de tiempo, para supervisar que la parte demandada cumpla con los requisitos relevantes de la ADA y así asegurarse de que esta haya adoptado una política institucional que permita que la parte

AG2022CV00873 10/06/2022 09:40:46 pm Entrada Núm. 1 Página 19 de 19

demandada adopte medidas alternas, totalmente en cumplimiento con la ley;

D. En caso que la parte demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la propiedad, como medida para detener la condición discriminatoria hasta tanto la parte demandada haya acreditado de manera fehaciente y a satisfacción del tribunal, que se ha eliminado el discrimen;

E. Honorarios de abogado, costas y gastos de litigio, conforme a 42 USC § 12205.

F. La provisión de cualquier otro remedio que sea justo y propio en ley o equidad, que no haya sido expresamente solicitado, pero que proceda como cuestión de derecho.

**SOMETIDO RESPETUOSAMENTE.**
Hoy, 10 de junio de 2022

**Velez Law Group LLC**
División Derechos Civiles

f/José Carlos Vélez Colón
Lic. José C. Vélez Colon
RUA 18913
Condominio Midtown
421 Ave Muñoz Rivera #205
San Juan, PR 00918-3115
vlg@velezlawgroup.com
T.: (787)-254-8267

Abogado de la Parte Demandante